**Louis DUNNAM, Appellant,**

v.

**Ken BURNS, Appellee.**

No. 08–93–00014–CV.

Court of Appeals of Texas, El Paso.

April 27, 1995.

Ruggero S. Provenghi, Midland, for appellant.

Jim T. Jordan, Odessa, for appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

Louis Dunnam appeals a judgment holding him liable to Appellee for payment of a promissory note. Appellant and Steve Oualline jointly borrowed $35,000 from Appellee and agreed to repay the principal plus $5,000 on a date certain. After Appellant defaulted on the loan, Appellee sued to recover. Appellant defended by claiming the loan was usurious. We reverse the judgment of the trial court and remand this cause to it for further proceedings.

## I. SUMMARY OF THE EVIDENCE

The four-sentence instrument that memorializes Appellant's indebtedness to Appellee is, in Appellant's words, not a model of drafting precision. Because various details of it are critical to our decision, we include it as an appendix to our opinion. It was drafted by Appellant and reflects that Appellant borrowed $35,000, and agreed to "pay the entire balance plus $5,000 by 2/23/89," six months after he borrowed it.

## II. DISCUSSION

Appellant attacks the judgment of the trial court in two points of error, claiming that the trial court erred by refusing to submit his usury defense to the jury and by holding that he was personally obligated on the note which he signed.

■ In his second point of error, Appellant claims the trial court erred by failing to hold as a matter of law that the promissory note at issue was not his personal obligation. The issue was submitted to the jury, and it found that the note was Appellant's personal obligation, not merely the corporate obligation of Tornado Shelters, Inc. We therefore interpret his second point of error as a challenge to the legal and factual sufficiency of the evidence to support the jury's finding that Appellant was personally liable on the note. See Tex.R.App.P. 74(p) (requiring liberal construction of briefing rules and, consequently, of points of error).

■ In considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the jury's finding and disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.1965). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. Mexico's Industries v. Banco Mexico Somex, 858 S.W.2d 577, 580–81 (Tex.App.—El Paso 1993, writ denied); United States Fire Ins. Co. v. Ramos, 863 S.W.2d 534, 538 (Tex. App.—El Paso 1993, writ denied).

■ A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951); Oechsner v. Ameritrust Texas, N.A., 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied); Chandler v. Chandler, 842 S.W.2d 829, 832–33 (Tex.App.—El Paso 1992, writ denied). The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. Oechsner v. Ameritrust Texas, N.A., 840 S.W.2d at 136; Chandler v. Chandler, 842 S.W.2d at 833. It is not within the province of the court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792 (Tex.1951). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W.2d 508 (Tex.1947); Oechsner v. Ameritrust Texas, N.A., 840 S.W.2d at 136; Chandler v. Chandler, 842 S.W.2d at 833.

■ Significantly, Appellant concedes that the brevity of the note and his naked signature thereon conspire to render the instrument ambiguous. When a note is ambiguous as to the capacity in which a signatory signed it, the parties may introduce extrinsic evidence of the parties' intent. See Byrd v. Southwest Multi–Copy, 693 S.W.2d 704, 706 (Tex.App.—Houston [14th Dist.] 1985, no writ). Appellee testified that he deliberately loaned money to Appellant and Oualline in

their personal capacities because of past experiences with corporate debtors who escaped liability by filing for bankruptcy. Further, Appellant admitted that he paid one $500 payment on the note out of his personal funds. The foregoing provides a sufficient evidentiary basis to support the jury's conclusion that the note was Appellant's personal obligation. Accordingly, we overrule his second point of error.

In his first point of error, Appellant claims the trial court erred by refusing to submit his usury defense to the jury. Usury is interest in excess of the amount permitted by law. TEX.REV.CIV.STAT.ANN. art. 5069–1.01(d) (Vernon 1987). Interest is compensation for the use or forbearance of money. TEX.REV. CIV.STAT.ANN. art. 5069–1.01(a) (Vernon 1987). For most transactions between private persons, the maximum allowable rate of interest is 18 percent if the parties agree on a rate of interest, TEX.REV.CIV.STAT.ANN. art. 5069–1.04(b)(1) (Vernon 1987), and 6 percent if they do not, TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987). Usurious contracts are against public policy, TEX.REV.CIV.STAT. ANN. art. 5069–1.02 (Vernon 1987), and persons who contract for or collect usurious interest are subject to penalties that may exceed the total value of the contract, see TEX.REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon 1987).

■ We must initially determine whether the $5,000 additional sum contained in the promissory note constitutes interest. Interest need not be denominated interest. See Gonzales County Sav. & Loan Assoc. v. Freeman, 534 S.W.2d 903, 906 (Tex.1976) ("Charges which are in fact interest remain so, regardless of the label used."). When money is advanced in exchange for an obligation to repay the advance plus an additional amount, the added amount is interest that may not exceed the statutory maximum. Johns v. Jaeb, 518 S.W.2d 857, 859 (Tex.Civ. App.—Dallas 1974, no writ); Najarro v. SASI Int'l, 904 F.2d 1002, 1007 (5th Cir.1990) (applying Texas usury law), cert. denied, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775

(1991). The foregoing principles instruct that Appellant's absolute obligation to pay $5,000 in addition to the principal renders the additional amount interest.

■ Appellee does not contest that the $5,000 is interest. Neither does he claim that the amount of interest was not usurious, although we note that the promissory note effectively charges a 28.57 percent interest rate, which exceeds even the highest rate permitted by statute. See TEX.REV.CIV.STAT. ANN. art. 5069–1.04 (Vernon 1987) (permitting 28 percent interest on certain transactions). He argues, rather, that he did not "charge" such interest because the instrument was drafted by Appellant and because Appellee was actually interested in collecting only the principal amount. In so arguing, Appellant misapprehends the significance of his intent and of the identity of the drafter of the promissory note.

■ A document that contains an absolute obligation to repay a loan together with interest in excess of the amount permitted by statute is usurious on its face. See Johns v. Jaeb, 518 S.W.2d at 859–60; Maxwell v. Bankston, 433 S.W.2d 229, 232–33 (Tex.Civ.App.—Texarkana 1968, no writ); Najarro v. SASI Int'l, 904 F.2d at 1007. "It is not the lender's subjective intent to charge usury that makes a loan usurious, but rather his intent to make the bargain that was made." Alamo Lumber v. Gold, 661 S.W.2d 926, 928 (Tex.1983), quoted in Najarro v. SASI Int'l, 904 F.2d at 1009. The specific intent of the lender is immaterial because it is presumed to be reflected in the document he signs. Ashley v. Edwards, 626 S.W.2d 107, 111 (Tex.App.—Houston [14th Dist.] 1981, no writ); Johns v. Jaeb, 518 S.W.2d at 860. Further, "once the agreed terms have been reduced to writing in the form of a compulsory contract, the test of alleged usury is not concerned with which party might have originated the alleged[ly] usurious provisions." Tanner Dev. v. Ferguson, 561 S.W.2d 777, 781 (Tex.1977), quoted in Najarro v. SASI Int'l, 904 F.2d at 1010 n. 9.[1]

---

1. That the law of usury is unconcerned with the origins of usurious provisions is at least partially explained by the law's assumptions about the

usual structure of loan transactions and the negotiations that surround them. As the federal Fifth Circuit has observed, "In almost all usury

The foregoing principles foreclose Appellee's arguments. The drafter of the usurious promissory note is simply irrelevant. By agreeing to a loan transaction that awards him usurious interest, Appellee "charged" such interest and thereby subjected himself to the law of usury. Moreover, the extent to which Appellee was concerned with collection of the principal to the exclusion of the interest is irrelevant because of his assent to the written agreement.[2] The instrument embodies a usurious transaction, and Appellee, as the lender, contracted for usurious interest. Appellant's first point of error is sustained.

Although Appellant complains of the trial court's refusal to submit a usury issue to the jury, he correctly asserts that by so refusing, the trial court effectively held that the contract was not usurious as a matter of law. But because there were no usury-related factual controversies for the jury to resolve,[3] the trial court erred in its assessment of the contract, not in refusing to submit the issue to the jury. In his brief, Appellee does not raise any new fact issues appropriate for resolution by a jury. Thus, although we reverse the judgment of the trial court, we do not order a new trial. We do, however, remand this cause to the trial court to determine the extent of Appellant's defense and to determine his reasonable attorney's fees.

 We think it prudent to provide some guidance to the trial court on remand by identifying the statute that controls the extent of Appellant's usury defense. This requires us to determine the applicable interest rate limit. Article 5069–1.03 states that when no specified rate of interest is agreed upon by the parties, the maximum amount of interest allowed is 6 percent per annum. Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987). Conversely, if the parties expressly agreed to a rate of interest, Article 5069–1.04(b)(1) permits parties to charge a maximum of 18 percent interest. Tex.Rev. Civ.Stat.Ann. art. 5069–1.04(b)(1) (Vernon 1987). Thus, the threshold issue is whether the parties agreed to a rate of interest. An "agreed interest rate" does not have to be specified as a numeric rate in order to be immune from the application of Article 5069–1.03. The 6 percent ceiling does not apply to a loan transaction if an interest rate can be determined from the language of the contract or from the parties' course of conduct. *See Preston Farm & Ranch Supply v. Bio–Zyme Enters.*, 625 S.W.2d 295, 300 (Tex.1981); *Moody v. Main Bank*, 667 S.W.2d 613, 619 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). When a promissory note provides the total amount of interest, the amount of principal, and the duration of the loan, it will generally be possible to calculate the interest rate. Because the promissory note at issue in the instant case provides the three required elements, we find that the interest rate can be determined from it. Article 5069–1.04's 18 percent ceiling therefore applies to the transaction.

Article 5069–1.06 prescribes the penalty to be exacted from one who charges usury. When the aggregate penalty is less than the amount of the original debt, the usurious contract is effectively unenforceable to the extent it is usurious. Thus, to the extent the loan in the instant case is usurious, Appellant had a valid defense to payment. Because we have concluded that 18 percent is the maximum lawful rate of interest for the transaction between Appellant and Appellee, the trial court must look to Article 5069–1.06(1) to determine the amount of Appellant's obligation that the usurious portion of the contract operates to excuse. Article 5069–1.06(2) does not control because the contract's 28.57 percent interest rate does not

---

cases, it is the borrower who solicits the funds; lenders rarely force their money on unwitting borrowers." *Najarro v. SASI Int'l*, 904 F.2d at 1010.

**2.** Although Appellee did not sign the promissory note, he does not argue that he is not bound by it, presumably because he thinks himself estopped from making such a claim by virtue of his attempt to enforce the instrument in court.

**3.** Appellee did not at trial and does not now claim, for example, that his attempt to charge usurious interest was the product of a bona fide error. See Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1) (Vernon 1987) (precluding imposition of penalties where usury "results from an accidental and bona fide error.").

constitute double usury because it is less than twice the maximum permissible rate of interest.

Article 5069–1.06(1) provides for an award of "reasonable attorney fees fixed by the court." That the record before us contains no evidence of the fees incurred by Appellant prevents us from rendering judgment. *But-ler v. Wright Way Spraying Serv.,* 683 S.W.2d 823, 832 (Tex.App.—San Antonio), *rev'd on other grounds,* 690 S.W.2d 897 (Tex. 1985) (per curiam). We therefore remand this cause to the trial court to determine the reasonable attorney's fees to which Appellant is entitled and to employ Article 5069–1.06(1) to calculate the portion of Appellant's obligation that it operates to excuse.

**634** ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

# APPENDIX

## TORNADO SHELTERS
### of Odessa, Texas

7427 E. HIGHWAY 80 • P. O. BOX 1812 • ODESSA, TX 79760-1812 • 915/563-5806

The officers of Tornado Shelter Inc. on this date 8/23/88, did borrow

$35,000.00 From Mr. Ken Burns Jr.. They agree to pay the entire

balance plus $5,000.00 by 2/23/89. The officers put up as collateral;

1-36ft. gooseneck trailer, 1- 24ft gooseneck trailer, 4-16ft trailers,

5 fiberglass molds. There are no leins on the above assets.

Louis Dunnam Steve Oualline

PLAINTIFF'S
EXHIBIT
1