Lawrence E. STURM, Appellant,

v.

Guenther MUENS, Appellee.

No. 14–04–00917–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 8, 2007.

Jerry L. Schutza, Houston, for appellants.

George Frederick Rhodes, Bellaire, for appellee.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## MAJORITY OPINION

RICHARD H. EDELMAN, Justice.

In this promissory note dispute, Lawrence E. Sturm appeals a judgment in favor of Guenther Muens on the grounds that the trial court erred by granting: (1) summary judgment in favor of Muens on his promissory note claim and against

Sturm's counterclaim for usury because there is a fact question whether the note is usurious; and (2) judgment on the jury verdict for fraud because there is no evidence to support it. We reverse and remand in part and render in part.

## Background

In 1999, Sturm executed a promissory note (the "note") to Muens in the amount of $85,000, payable within one year, at an annual interest rate of 18%. Sturm paid a total of $18,502.65 on the note, and Muens filed suit to collect the balance, also alleging fraud. Sturm asserted usury as a defense and as a counterclaim. The trial court granted Muens's motion for partial summary judgment on the note claim, and, after a jury trial, entered judgment on the verdict in favor of Muens on the fraud claim,[1] and ordered that Sturm take nothing on his usury counterclaim.

## Usury

Sturm's first issue challenges the summary judgment awarding recovery on the promissory note claim and the denial of his counterclaim for usury on the ground that there is a fact question as to whether the note was usurious.

A traditional summary judgment may be granted if the motion and summary judgment evidence show that, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). To avoid a summary judgment by asserting an affirmative defense to the claim for which summary judgment is sought, a nonmovant must adduce evidence raising a fact issue on each element of the defense. *See Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972). In reviewing a summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex.2006).

■■■ Contracts for usurious interest are contrary to public policy and prohibited by the Texas Constitution and Texas Finance Code. *See* TEX. CONST. art. XVI, § 11; TEX. FIN. CODE ANN. §§ 302.001(b), 305.001–.008 (Vernon 2006 & Supp.2006). Usurious interest is compensation for the use, forbearance, or detention of money that exceeds the applicable maximum amount allowed by law. Tex. Fin.Code Ann. § 301.002(a)(4), (a)(17) (Vernon Supp.2006). A usurious transaction thus consists of: (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of greater compensation than is allowed by law for the borrower's use of the money.[2] Conversely, a charge which is supported by distinctly separate and additional consideration, other than the lending of money, is not interest for usury purposes.[3] However, any dispute in the evidence as to whether a charge in addition to stated interest is actually for separate consideration, rather than a device to conceal usury, raises a fact issue.[4]

---

1. Muens made an election of remedies to recover on the jury verdict for fraud rather than on the summary judgment for the note balance. However, because we reverse the judgment on the fraud claim, as discussed in the following section, we must also address Sturm's challenges to the summary judgment.

2. *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex.1994); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982).

3. *Tex. Commerce Bank v. Goldring*, 665 S.W.2d 103, 104 (Tex.1984).

4. *See First Bank*, 877 S.W.2d at 287; *Goldring*, 665 S.W.2d at 104. With exceptions not

### Note Claim

In this case, Sturm's summary judgment response (the "response") contested the motion for summary judgment on the grounds that: (1) the highest legal interest was 10%;[5] (2) the loan transaction included a written agreement (the "agreement") in which Sturm assigned certain accounts receivable to Muens for ten dollars consideration and was entitled to repurchase them on the maturity date of the note for $35,700 (the "repurchase amount"); and (3) when added together, the 18% interest rate stated in the note plus the $35,700 payment to be made under the agreement amounted to a usurious interest rate of 60%. Muens's reply to the response asserted that the agreement alleged by Sturm could not be considered because: (1) the interest rate applicable to the loan is established by the note alone; (2) the agreement does not describe the repurchase amount as interest; and (3) the note was the final agreement between the parties, and evidence concerning the agreement was therefore barred by the parol evidence rule.

██ The agreement states that as consideration for the purchase of the receivables from Sturm, Muens agreed to pay ten dollars and to fund the $85,000 loan under the note. In return, Muens was to be repaid the $85,000, 18% interest on that amount for one year, plus $35,700 (or retain Sturm's receivables). Because there is no evidence that the assignment of the receivables is supported by any consideration other than making the loan, the agreement, if not barred by the parol evidence rule, would be some evidence that the $35,700 payment is compensation for the use of the money loaned and thus create a fact issue as to whether the note was usurious.

██ "When parties have concluded a valid integrated agreement with respect to a particular subject matter, the [parol evidence] rule precludes *the enforcement of* inconsistent prior or contemporaneous agreements." *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 31 (Tex.1958) (emphasis added). However, because the rule applies only where such evidence is offered for the purpose of *enforcing* an inconsistent agreement (*i.e.,* determining the terms of an agreement that is to be enforced), it does not apply to evidence offered for the purpose of showing that no agreement is to be enforced at all, such as by reason of illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause. *See* Restatement (Second) of Contracts § 214 (1981).[6] Therefore, the parol evidence rule does not bar evidence offered to show that a loan transaction is usurious. *See Smith v. Stevens,* 81 Tex. 461, 16 S.W. 986, 987 (1891).

██ In *Transamerican,* Transamerican Leasing Company sued Three Bears, Incorporated for breach of three agreements

---

applicable here, the usurious nature of a contract is determined at the time of its inception. *See In re Worldwide Trucks, Inc.,* 948 F.2d 976, 983 (5th Cir.1991).

**5.** Because Muens did not dispute this contention or otherwise address the maximum legal rate of interest in his summary judgment materials or in his brief on appeal, and because the 60% interest rate alleged by Sturm is well above any legal rate, we need not address the maximum legal rate.

**6.** *See generally* 6 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 573 (1960) (recognizing that the parol evidence rule does not apply in determining whether: (1) the parties made a contract; (2) the contract is void or voidable for any reason; or (3) the parties assented to a particular writing as the complete and accurate integration of that contract).

by which Three Bears leased restaurant equipment from Transamerican. *Transamerican Leasing Co. v. Three Bears, Inc.*, 586 S.W.2d 472, 473 (Tex.1979). Three Bears challenged the trial court's exclusion of testimony showing that the parties: (1) had also entered into an oral agreement whereby Three Bears had an option to purchase the restaurant equipment; and (2) had intended the difference between the total lease payments and the purchase cost to be paid as interest, which would exceed an annual rate of twenty percent. *Id.* at 477. In response to Three Bears's contention that this evidence should have been admitted to establish a violation of the usury statutes, the Texas Supreme Court stated:

> We hold that the evidence was properly excluded as violative of the parol evidence rule. The written lease agreements contain no provision giving Three Bears an option to purchase the equipment. Furthermore, each lease states that it "constitutes the sole agreement of the parties with respect to the subject matter thereof." Thus, the claimed purchase option agreement is inconsistent with the lease contracts and not merely collateral to them. When such a purchase option agreement is inconsistent with, and not merely collateral to, a lease contract, the parol evidence rule applies. *Hobbs Trailers v. J.T. Arnett Grain Co., Inc.*, 560 S.W.2d 85 (Tex. 1977).

Three Bears contends, however, that the parol evidence rule is not applicable to situations in which a party seeks to show that an apparently valid contract is really a mask for usury. As authority, Three Bears cites cases in which *courts have held that parol evidence is admissible to show that a Loan agreement, valid on the face of the written instrument, is in fact, a usurious loan.* See, e.g., *Smith v. Stevens*, 81 Tex. 461, 16 S.W. 986 (1891); *F.B. & D., Inc. v. Nathan Alterman Electric Co.*, 394 S.W.2d 821 (Tex.Civ.App.San Antonio 1965, writ ref'd n.r.e.). *These cases are not applicable to this particular case. In order for Three Bears to establish usury, it must first establish that the leases were not mere leases but were, instead, lease-purchase agreements. Without parol evidence of the purchase option, the lease agreements cannot constitute loan agreements.*

*Id.* at 477–78 (emphasis added). Importantly, the Court acknowledged the existence of the rule that parol evidence is admissible to show that a loan agreement, valid on its face, is, in fact, a usurious loan, and did not suggest any disagreement with it. *Id.*[7] Instead, it held only that where a written agreement does not purport to be a loan transaction at all, parol evidence is not admissible to show that the agreement is, in fact, a loan. *Id.*[8]

In this case, unlike *Transamerican*, the existence of a loan is clearly set forth in the note and undisputed by the parties.[9]

---

7. In that usury is against public policy, a contrary rule, excluding evidence necessary to establish usury where it exists but is not reflected on the face of a promissory note, would itself be against public policy.

8. Therefore, of the three elements of a usurious transaction, parol evidence is admissible to show only the third, the exaction of greater compensation than is allowed by law for the borrower's use of the money. *See also Bran-*

*non v. Gulf States Energy Corp.*, 562 S.W.2d 219, 222-23 (Tex.1977) (holding that parol evidence was not admissible to show that a payment, which had been clearly designated as a lease rental for an existing lease, was instead a bonus payment for an yet-to-be executed lease).

9. In addition, the agreement is in writing and signed by Muens, and he filed no verified

Therefore, for the purpose of showing that the note, valid on its face, is, in fact, a usurious loan, the agreement is not barred by the parol evidence rule.

■■■■ Muens also contends that the transaction was not usurious because the agreement does not refer to an interest rate and because he never demanded payment of the amount due under the agreement. However, whether an amount of money is compensation for the use of money depends not on what the parties call it, but on the substance of the transaction.[10] Moreover, it is not necessary that a demand be made for the payment of usurious interest because merely contracting for it is a violation of the usury statutes.[11] Because Sturm presented legally sufficient summary judgment evidence to raise a fact issue on each element of his defense for usury, the summary judgment cannot be affirmed on the promissory note claim. Accordingly, Sturm's first issue is sustained as to the promissory note claim (and usury defense).

### Usury Counterclaim

■■■ Although Sturm's counterclaim was not expressly addressed in the partial summary judgment proceeding or at trial, the trial court's judgment denied relief on

it. As a general rule, any claim not conclusively established by the evidence and no element of which is submitted or requested to be submitted to the jury at trial is waived. TEX. R. CIV. P. 279. In this case, a jury submission on Sturm's counterclaim was neither submitted nor requested to be submitted at trial.

■■ However, the failure to request a jury submission does not waive a claim that the trial court has already disposed of as a matter of law, such as by granting a directed verdict.[12] A claim disposed of by summary judgment, such as Muens's note claim in this case, also falls within this exception.[13] In addition, a complaint is preserved for review on appeal if it was made known to the trial court by a timely request, the grounds for it were made known to the trial court with specificity, and the trial court ruled on the request expressly or implicitly. TEX. R. APP. P. 33.1(a).

Our record in this case does not establish whether Sturm's usury counterclaim is based on the same factual allegations and evidence as his usury defense (because his counterclaim pleading did not allege any facts and Muens's motion for summary judgment did not address the counter-

---

answer denying his execution of it. *See* TEX. R. CIV. P. 93(7).

10.  *See First USA Mgmt., Inc. v. Esmond*, 960 S.W.2d 625, 627 (Tex.1997); *First Bank*, 877 S.W.2d at 287 (noting that courts may look past label to determine if fee is service charge or interest); *Gonzales County Sav. & Loan Ass'n v. Freeman*, 534 S.W.2d 903, 906 (Tex. 1976) (emphasizing courts examine form of transaction and its substance in determining existence or non-existence of usury).

11.  *See* TEX. FIN. CODE ANN. 305.001(a); *Cochran v. Am. Sav. & Loan Ass'n*, 586 S.W.2d 849, 850 (Tex.1979). The fact that Sturm drafted the promissory note is also immaterial. *See Tanner Dev. Co. v. Ferguson*,

561 S.W.2d 777, 781 (Tex.1977); *see also Najarro v. SASI Int'l, Ltd.*, 904 F.2d 1002, 1010-11 n. 9 (5th Cir.1990) (applying Texas usury law and finding the fact that defendants structured deal did not estop them from raising usury defense); *Dunnam v. Burns*, 901 S.W.2d 628, 632 (Tex.App.-El Paso 1995, no writ).

12.  *R.R. St. & Co., Inc. v. Pilgrim Enters., Inc.*, 81 S.W.3d 276, 305–06 (Tex.App.-Houston [1st Dist.] 2001, *rev'd on other grounds*, 166 S.W.3d 232, 255 (Tex.2005)).

13.  *See generally* 4 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 22:53 (2d. ed. 2001 & Supp.2004).

claim). To the extent the counterclaim is based on different allegations or evidence than the defense, Sturm did not raise those allegations or evidence in response to the motion for summary judgment on the note claim, and he did not offer evidence or request a jury submission on any such allegations at trial. In that event, no complaint regarding the counterclaim is before us in this appeal, and our disposition does not reach or affect the trial court's denial of the counterclaim.

Conversely, to the extent that the counterclaim is based on the same allegations and evidence as the defense, then the trial court's granting of partial summary judgment on the promissory note claim ruled, in effect, not only that the evidence failed to raise a fact issue on each of the elements of the defense, but also that that evidence failed to raise a fact issue on any common elements of the counterclaim. Although the partial summary judgment did not purport to adjudicate the counterclaim (expressly or impliedly), it nevertheless constituted a ruling on the legal sufficiency of Sturm's evidence to prove the common elements of the usury counterclaim that remained in effect at the time of trial. The summary judgment would thus have been incompatible with a submission to the jury of a counterclaim that relied on any common elements and evidence of usury as the defense because a final judgment granting relief on both the note claim and usury claim would contradict itself as to the legal sufficiency of that evidence to prove those elements. Therefore, the legal sufficiency of the evidence to prove the counterclaim had, in effect, already been ruled upon by the trial court, and Sturm cannot be said to have waived that counterclaim by failing to request a jury submission on it at trial. Accordingly, our sustaining of his first issue also reverses the trial court's denial of his counterclaim to that extent.

### Fraud

▆▆▆ Sturm's second issue contends that the trial court erred by awarding recovery on Muens's fraud claim because there was no evidence or, alternatively, insufficient evidence that: (1) he made a false statement and (2) he intended to defraud Muens.[14]

In deciding a no evidence (legal sufficiency) challenge, we determine whether there is evidence that would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). In doing so, we: (1) credit all favorable evidence that reasonable jurors could believe; (2) disregard all contrary evidence except that which they could not ignore; (3) view the evidence in the light most favorable to the verdict; and (4) indulge every reasonable inference that would support the verdict. *Id.* But if the evidence allows only one inference, we may not disregard it. *Id.*

▆▆▆ A promise of future performance, such as to repay the note in this case, constitutes an actionable misrepresentation if the promise was made with no intention of performing it at the time it was made.[15] However, the mere failure to

14. The elements of fraud are that: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 211 n. 45 (Tex.2002).

15. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48

perform a contract is not alone evidence of such fraud.[16]   Rather, there must be evidence relevant to the promisor's intent not to perform at the time the promise was made.[17]   This intent may be inferred from the party's actions after the representation is made.  *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986).

In this case, Sturm, a real estate developer, borrowed the $85,000 from Muens in order to pay the preliminary expenses necessary to obtain a much larger amount of financing for a real estate project (the "project").  There is no evidence that, at the time of entering into the note, Sturm did not intend to develop the project or to repay the note if the larger financing was obtained.  Nor is there any evidence that Sturm did not spend at least the amount of the loan in connection with the project.  Rather, the evidence is uncontroverted that Sturm made a considerable effort to obtain the financing and develop the project, but was unsuccessful; and that he made five payments on the note totaling over $18,000 even without obtaining the financing.

To support his contention that Sturm did not intend to perform as promised, Muens relies on the trial testimony of Sturm, Muens, and Mitchell Feldman, who had acted as an intermediary between Sturm and Muens.  Feldman testified that he did not believe Sturm was honest about his intent or the project for which the money was borrowed because: (1) Feldman had not seen any architectural plans; (2) he was disappointed by Sturm's presentation to a potential investor in New York; (3) Sturm spent money to take his family to Mexico; and (4) the project was ultimately unsuccessful.  Muens testified that Sturm told him that in the event he was unable to obtain financing for the project to pay Muens, he would repay the loan from his business income generated from smaller ongoing projects.  In this regard, Sturm admitted in cross-examination that he did not have sufficient income from other projects to repay the entire loan to Muens.  He further testified that he used funds generated from his smaller projects to pay off other creditors[18] but not to repay any of the loan to Muens.

However, rather than being probative of an intent by Sturm not to repay the note at the time it was entered into, these facts show only that Sturm did not approach the project as effectively as might have been possible or use all his available funds to repay the note.[19]   If such circumstances were sufficient to establish fraud, few loan defaults would avoid fraud liability.  On the contrary, reviewing this evidence under the applicable standard, it does not reasonably support an inference of an intent not to repay the note at the time it was entered.  Therefore, appellant's second issue is sustained.

Having sustained both of Sturm's issues, we: (1) reverse the trial court's judgment in its entirety; (2) remand the promissory note claim and, to the extent applicable, as

(Tex.1998);  *Schindler v. Austwell Farmers Co-op.,* 841 S.W.2d 853, 854 (Tex.1992).

16.  *Formosa,* 960 S.W.2d at 48;  *Schindler,* 841 S.W.2d at 854.

17.  *See Formosa,* 960 S.W.2d at 48.

18.  Sturm testified that he chose to repay Ford Credit because he needed to keep his truck for transportation and he repaid loans to Citizens State Bank and Industry State Bank because those banks held liens on essential farming equipment.

19.  Moreover, Sturm testified that it was not possible to prepare architectural drawings without first obtaining a parcel of land, and both Feldman and Sturm testified that Sturm's attempts to acquire a tract of land for the project were unsuccessful.

discussed above, the usury counterclaim, to the trial court for further proceedings; and (3) render a take-nothing judgment on Muens's claim for fraud.

KEM THOMPSON FROST, J., dissenting.

The court should affirm the take-nothing judgment on appellant Lawrence E. Sturm's usury counterclaim. Because the court instead reverses that portion of the judgment and remands the usury counterclaim for a new trial, I respectfully dissent.

Sturm's usury counterclaim against appellee Guenther Muens was an independent claim for affirmative relief. It was never the subject of a motion for summary judgment. Although Muens filed a motion for partial summary judgment on his promissory note claim in January 2003, and Sturm responded to this traditional motion by asserting a usury defense, Muens did not move for summary judgment on any of Sturm's claims for affirmative relief. Muens did not mention usury or any Sturm's counterclaims in his motion for summary judgment. The trial court's September 2003 order granting summary judgment on the note claim did not grant summary judgment in favor of Muens on Sturm's usury counterclaim or on any other claim for affirmative relief. The trial

court, without stating its reasons, simply granted partial summary judgment in favor of Muens on his claim,[1] leaving all other claims and counterclaims for trial. In fact, after granting judgment on the note claim, the trial court stated that this was the only relief that it granted.

The majority concludes that, if a motion for summary judgment deals with a defense involving the same allegations and evidence as a counterclaim in the case, then an order granting the motion impliedly adjudicates the counterclaim, even though the motion and the order do not address the counterclaim. This is not Texas law.[2]

Because Muens's motion for partial summary judgment and the order granting it dealt only with Muens's note claim, the other claims asserted by and between the parties remained to be adjudicated. Thus, when the parties went to trial in April 2004, Sturm's usury counterclaim was a live claim.

At the jury trial, Muens's fraud claim was the only issue submitted to the jury. Sturm did not request a jury issue on his usury counterclaim, nor did he object to this omission from the jury charge. Several months after the jury trial, in August 2004, the trial court signed a final judg-

1. The court's order stated in its entirety:
On this day came to heard [sic] Plaintiff Guenther Muens's Motion for Partial Summary Judgment against Defendant Lawrence Edward Sturm, Sr. The Court, having considered the pleadings and evidence presented, is of the opinion that no genuine issue of material fact exists and as a matter of law the motion should be GRANTED as follows. [sic]
IT IS THEREFORE ORDERED that Guenther Muens have judgment against Lawrence Edward Sturm, Sr. as follows. [sic]
[awarding damages on the promissory note, attorney's fees, and interest]
All relief not specifically granted is denied.

2. See Lehmann, 39 S.W.3d 191, 205 (stating that "[a]n order that adjudicates only the

plaintiff's claims against the defendant does not adjudicate a counterclaim, cross-claim, or third party claim, nor does an order adjudicating claims like the latter dispose of the plaintiff's claims"); Gilchrist v. Bandera Elec. Coop., 966 S.W.2d 716, 717–19 (Tex.App.— San Antonio 1998, no pet.) (holding that trial court erred in granting summary judgment as to counterclaims not addressed in motion for summary judgment and remanding these claims to the trial court even though these claims were intertwined with the plaintiff's breach of contract claim, as to which the appellate court affirmed the trial court's judgment in plaintiff's favor).

ment which stated, among other things, "[t]the court denied Defendant Lawrence Edward Sturm, Sr.'s counter-claim for usury and ordered that Sturm take nothing."

Sturm does not complain on appeal that the trial court erred in rendering this take-nothing judgment on his usury counterclaim following the jury trial. Nor does Sturm complain on appeal that the trial court failed to submit his usury counterclaim to the jury or that the trial court improperly disposed of it after the jury trial; rather, Sturm bases his appellate complaint on the false premise that the trial court disposed of his usury counterclaim by summary judgment before trial. The majority also bases its analysis on the erroneous statement that the summary judgment disposed of Sturm's counterclaim.[3] That simply did not happen. Because Sturm failed to preserve error as to the trial court's true disposition of his usury counterclaim[4] and failed to assign error to that ruling in this court,[5] that portion of the judgment should be affirmed.

---

3. *See ante* at p. 2 n. 1.

4. The failure to raise a complaint at trial to a jury charge or to the judgment waives review of that complaint on appeal. *See* TEX. R. APP. P. 33.1; TEX. R. CIV. P. 274 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted [in the jury charge] or requested are waived."); *Bass v. Walker*, 99 S.W.3d 877, 889 (Tex.App.—Houston [14th Dist.] 2003,

pet. denied) (holding appellants failed to preserve error because they did not present to the trial court their complaint regarding the trial court's judgment).

5. *See* TEX. R. APP. P. 38 1(e); *Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986) (holding that "the court of appeals may not reverse a trial court's judgment in the absence of properly assigned error").